Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 122 | **DATE** | 6/7/2004 |
| **CASE TITLE** | UNITED STATES vs. TERRENCE BARLOW | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to vacate, set aside, or correct sentence is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 0 8 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 9 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TERRENCE BARLOW

No. 04 CV 0122
No. 99 CR 0835
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Petitioner Terrence Barlow has moved, pursuant to 28 U.S.C. § 2255, to vacate or correct the sentence imposed on him on January 25, 2001, and to take discovery.

Background

On October 29, 1999, Barlow and a traveling companion, William Guidry, were observed by DEA Task Force Agents, Eric Romano and Patrick Murray, in an Amtrak waiting area at Union Station, Chicago, Illinois. The Amtrak waiting area was designated for ticketed passengers waiting to board an Amtrak train from Chicago to Los Angeles, California – the "Southwest Chief." Agents Romano and Murray were assigned to perform drug interdictions at Union Station that afternoon, and were dressed in civilian clothing. While scanning the passengers seated in the waiting area, Agent Murray noticed Barlow and Guidry continuously looking at him and Agent Romano. Barlow and Guidry would turn their heads to peer over the agents, and then turn back around and talk between themselves. Before Barlow and Guidry boarded the train, the agents approached the two men and produced their DEA credentials. The agents advised the two men that they were law enforcement officers and briefly interviewed them. The agents then asked for and received consent to search Barlow's and Guidry's bags. The agents found in Barlow's bag a package containing approximately 485 grams of cocaine base

("crack cocaine") wrapped in duct tape and secreted in a pair of jeans, and recovered loaded handguns from both men's luggage.

On December 15, 1999, a grand jury returned a two-count indictment charging Barlow with possession with intent to distribute approximately 485 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, and carrying that firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On October 12, 2000, a jury found Barlow guilty on both counts of the indictment. Prior to the trial, however, on May 9, 2000, he filed an extensive list of 20 discovery requests, requesting, *inter alia*, "the names and races of all individuals stopped by all agents and officers detailed to the DEA Transportation Task Force during the years 1995-2000, including but not limited to, date and time of stop; length of stop; reason for the stop; location of the stop; and outcome of the stop and names of all agents or officers involved in the stop; or records from which this data can be obtained." Barlow's motion for discovery – which was filed along with his discovery request – argued that he was "pursued, stopped, interviewed and investigated by [DEA] agents based on his race." Essentially, Barlow contended that the DEA agents who arrested him engaged in unconstitutional "racial profiling" leading to his ultimate arrest.

In his motion and accompanying memorandum of law, Barlow cited to the Supreme Court's decision in *United States v. Armstrong*, 517 U.S. 456 (1996). In *Armstrong*, the Supreme Court considered the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race, but the same showing applies to a claim for selective search and seizures as well. In discussing the proper standard to be applied, the Court reviewed the "demanding" standard applicable to the

underlying selective prosecution claim. *Armstrong*, 517 U.S. at 463. Such a claim, the Court explained, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* Accordingly, the Court reasoned, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 464. The Court did not want "to unnecessarily impair the performance of a core executive constitutional function." *Id.* at 465. Indeed, the Court noted:

> If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.

*Armstrong*, 517 U.S. at 468. In the context of these concerns, the Court settled on a "threshold" requiring a "credible showing of different treatment of similarly situated persons." *Id.* at 470. "Absent some evidence of different treatment for similarly-situated individuals of other races, [defendants seeking discovery are] engaged in the type of fishing expedition rejected by the Supreme Court and this court." *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001).

Regarding his motion, Barlow argued that he had "highly statistically significant" evidence establishing his claim of racial profiling, and maintained that this evidence satisfied the threshold required by *Armstrong* in order to obtain the discovery he was requesting. In support of his contention, Barlow provided me with: (1) the DEA Report of Investigation describing his arrest; (2) a "certification" from John Lamberth, a psychology professor from Temple University, setting forth his statistical analysis and conclusions; and (3) a memo from Michael Medina, an

3

investigator with the Federal Defender Program, on the subject of "Amtrak Observations." Lamberth made observations over a 10-day period, and conducted a "statistical analysis" to determine whether "officers of the DEA are using race as a factor when individuals are approached, stopped, searched and/or arrested." Lamberth concluded that his results were "highly statistically significant" and "strongly suggest that officers from the DEA are using race as a factor when individuals are approached, stopped, searched and/or arrested." I found that "[t]he analysis offered by [Lamberth] was not even vaguely persuasive." I noted that Lamberth was not entitled to make the assumption – which turned out to be untrue – that the one stop the observers saw was a DEA stop. Additionally, I characterized Lamberth's inclusion of Barlow's stop in his data stop to be "statistically indefensible." I unequivocally concluded that "[t]here is simply no evidence that the DEA engaged in racial profiling." Accordingly, Barlow's request for discovery under Armstrong was denied.

On June 7, 2000, Barlow filed a Motion for Reconsideration of my discovery ruling. I denied this motion on June 16, 2000, characterizing Barlow's claim of racial profiling as "speculation" and emphasizing that Barlow "must produce more than conjecture to meet his threshold burden under *Armstrong*." On appeal, the Seventh Circuit Court of Appeals affirmed my denial of Barlow's motion for discovery on his claim that the DEA agents had engaged in racial profiling. *United States v. Barlow*, 310 F.3d 1007 (7th Cir. 2002). On May 27, 2003, the Supreme Court denied certiorari. 538 U.S. 1066 (2003).

Analysis

In his § 2255 motion, Barlow argues that he received ineffective assistance of counsel because his lawyer did not: (1) investigate and present a defense that agents physically abused

4

him as part of his request for discovery and a hearing on racial profiling under *Armstrong*; (2) make certain arguments on appeal related to that claim of abuse; and (3) make an objection at sentencing based on a distinction between cocaine base and crack cocaine.

In order to prevail on a claim of ineffective assistance of counsel, Barlow must show: (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The inquiry under the performance component of this test is "highly deferential" to counsel. *Id.* at 689. Counsel is presumed to have made reasonable strategic judgments, and "there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)). Strategic decisions are not second-guessed on review. *United States v. Ruzzano*, 247 F.3d 688, 696 (7th Cir. 2001). The second component of the *Strickland* test requires Barlow to establish that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 689. This requires Barlow to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Barlow must satisfy both prongs of the test in order to meet his burden, and a finding against petitioner on either prong ends the inquiry. *Id.* at 697. The Supreme Court explains:

> Although we had discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffectiveness claim to approach the inquiry in the same order or even to address both components of

> the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to
> dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which
> we expect will often be so, that course should be followed.

*Id.*

Barlow's argument regarding his lawyer's failure to investigate and present his defense of physical abuse at trial fails because the decision of counsel not to proffer Barlow's self-serving accusation of abuse was a strategic decision within the objective standards of reasonableness, and because even if Barlow's counsel had pursued the matter, the record does not demonstrate that the result would have been different. Barlow failed to meet the "rigorous" threshold showing necessary to obtain discovery under *Armstrong*. 517 U.S. at 468. He presented absolutely no evidence to me even remotely suggesting that the DEA had engaged in racial profiling in his case or any other case. Both the Seventh Circuit and I found that his statistical evidence was neither relevant nor reliable. *Barlow*, 310 F.3d at 1011. The Seventh Circuit continued:

> Even if we accept Dr. Lamberth's conclusions as statistically valid, however, Barlow has
> still presented no evidence that he received less favorable treatment than similarly
> situated white travelers. To meet his burden under *Armstrong*, Barlow needed to present
> evidence that the DEA agents observed whites engaging in the same behavior as Barlow –
> i.e., looking nervously over their shoulders – but chose not to approach them.

*Id.* at 1012. Barlow's proffer in his § 2255 motion does nothing further to carry the burden he has under *Armstrong*. An unsubstantiated allegation that a DEA agent pushed him into a chair does nothing to "present evidence that the DEA agents observed whites engaging in the same behavior as Barlow – i.e., looking nervously over their shoulders – but chose not to approach them." *Id.* As such, Barlow's counsel's decision not to introduce that evidence as irrelevant did

not prejudice Barlow, as it did not possibly change the result.[1] Further, counsel made a strategic decision not to have Barlow potentially perjure himself by testifying regarding the alleged abuse. The record demonstrates that counsel's decision not to pursue Barlow's claim of abuse, as irrelevant to a defense under Armstrong, was within objective standards of reasonableness and that there was no reasonable probability that, but for counsel's alleged errors, the result would have been different. Barlow's argument regarding his appeal is virtually identical to his argument regarding his trial, contending that as a result of his counsel's omission, the Seventh Circuit rejected his appeal. For the reasons identified above, I likewise reject this argument.

As for his sentencing, Barlow appears to argue that he received ineffective assistance of counsel when his counsel did not object to the characterization of the 485 grams of cocaine base that was found in luggage as crack or cocaine base. Presumably, Barlow would have preferred the substance to be characterized as something other than crack or cocaine base, but the parties stipulated that Barlow possesses 485 grams of cocaine base following analysis of the substance that was found. A challenge to counsel's decision to stipulate to such a fact is patently without merit in light of the absence of any evidence in support of Barlow's argument.

Finally, as in the underlying case, Barlow's current motion for discovery "borders on the frivolous." *United States v. Westmoreland*, 122 F.3d 431, 434 (7th Cir. 1997). He is engaged in

---

[1] Moreover, unlike *Armstrong*, this case does not involve an allegation of selective prosecution. Even if every single one of Barlow's allegations could be substantiated, the only thing that he could establish is that a law enforcement agent conducted a consensual interview of him based – at least in part – on his race. While this conduct cannot be condoned and may even rise to the level or an equal protection violation cognizable in a § 1983 claim for damages, there is no case law in the federal courts which would support any other form of relief on account of this type of violation.

"the type of fishing expedition rejected [in *Armstrong*.]" *See Hayes*, 236 F.3d at 896. As his motion was properly denied initially, it is denied once again.

For the reasons above, Barlow's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and his Motion for Discovery are DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 4 June 2001